LOLLEY, J.
|, This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Jimmy Dale Cotten, pled guilty to attempted second degree murder, in violation of La. R.S. 14:30.1 and 14:27, and he was sentenced to 49 years’ imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence. Cotten now appeals, and for the following reasons, we affirm his conviction and sentence. .
Facts
On October 7, 2011, Cotten drove to the home of Vernon Alexander Cooksey, armed with a “sawed-off’ 12-gauge shotgun. Blake Ferguson, Cooksey’s roommate, exited the residence first, and Cob-ten advised him to run. Gabrielle Hullsey, Cooksey’s girlfriend and Cotten’s former fiancée, was also at the residence. Cotten waited outside until Cooksey exited the residence. He shot Cooksey once in the abdomen at point-blank range. As Cook-sey lay on the ground pleading for his life, Cotten told Cooksey to shut up and then *301 shot him in the head. After the shooting, Cotten forcibly entered the residence, grabbed Hullsey, and put her into his vehicle. She later escaped when Cotten stopped to use a restroom. Cooksey spent six weeks in the hospital with life-threatening injuries.
Cotten was charged by bill of information with attempted second degree murder and second degree kidnapping. Ultimately, he pled guilty to attempted second degree murder. Pursuant to the plea agreement, the charge of second degree kidnapping was dismissed (along with an unrelated charge). The trial court ordered a presentence investigation report (“PSI”).
^Subsequently, the trial court conducted a sentencing hearing and heard testimony from the victim, his mother and father, and Cotten’s mother. Cooksey and his parents recounted the toll that the shooting had taken on his health, telling the trial court he continued to suffer from constant headaches. He was 26 years old at the time of the shooting and was-subsequently unable to maintain employment. Cooksey did not have health insurance, and his resulting medical bills were immense. Cooksey and his parents requested the maximum sentence. On the other hand, Cotten’s mother testified that he was in the military and had served in Iraq. She stated that he had not received all the help needed after returning from his deployment. The trial court also reviewed the PSI and medical records. Cotten was sentenced to serve 49 years’ imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence, He was advised that he had two years from “this date” to apply for post-conviction relief.
Cotten filed a motion to reconsider sentence, arguing that the sentence imposed was unconstitutionally excessive, but the trial court made no ruling on the motion. A second motion to reconsider sentence was filed, and a hearing was conducted. At that hearing, the trial court considered testimony from Roger Dale Flatt, an employee of Overton Brooks VA Medical Center. Flatt testified that Cotten had been treated for combat stress and post-traumatic stress disorder in June 2010, while he was deployed. According to Flatt, he met with Cotten in March 2011, and referred him to Dr.- Allen Barnes, who prescribed Klonopin. Dr. Thomas Flour-noy testified that Cotten completed the basic and advanced programs in mental health services at Caddo Correctional Center, and he became a group facilitator. ■ A neighbor, for whom Cotten had done work, testified that Cotten was | .¡different when he was not taking his medication and implied that Cotten’s girlfriend may have been taking his medication. The trial court took the matter under consideration and ultimately denied the motions to reconsider. This appeal followed.
Discussion
On appeal, Cotten argues that the sentence imposed by the trial court is excessive, because he had no prior felony convictions, pled guilty, was truly remorseful, and suffers from post-traumatic stress disorder. He asserts .that those mitigating factors showed that he could benefit from treatment. Cotten argues that society does not require he be incarcerated for 49 years in order to secure public safety, and the sentence was not particularized to the offender. We disagree.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects *302 that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v, Singleton, 48,114 (La.App.2d Cir.06/26/13), 117 So.3d 306. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr, P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Kilgore, 49,799 (La.App.2d Cir.06/17/15), 167 So.3d 1120. The important elements which should be considered are the defendant’s personal history (age, family ties, | ¿marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v, Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.08/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.05/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.09/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the of-fénse or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense, of justice. State v. Weaver, 2001-0467 (La.01/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.01/24/07), 948 So.2d 379.
Maximum sentences are generally reserved for the “most egregious and blameworthy offenders in a class.” As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.02/15/08), 974 So.2d 665; State v. Hogan, 47,993 (La.App.2d Cir.04/10/13), 113 So.3d 1195, writ denied, 2013-0977 (La.11/08/13), 125 So.3d 445. The trial court is given wide discretion in the imposition of sentences within the statutory limits. Such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La.App.2d Cir.12/14/11), 81 So.3d 228.
| fiRead together, La. R.S. 14:30.1 and 14:27 provide that attempted second degree murder is punishable by a term of imprisonment at hard labor of not less than 10 years nor more than 50 years, without the benefit of parole, probation, or suspension of sentence.
Cotten argues that the imposed sentence of 49 years’ imprisonment for a conviction of attempted second degree murder—one year less than the maximum sentence—is unconstitutionally excessive. The trial court is not required to list every aggravating or mitigating circumstance. The record in this case reflects that the trial court took notice and considered the relevant factors under La. C. Cr. P. art. 894.1. Specifically, the trial court noted: Cotten likely suffered from PTSD; he purposefully fired a second shot intended to kill an already wounded Cooksey; he made threats to at least one party during the commission of the offense; Cooksey suffered severe injuries as a result - of the offense; and, after shooting Cooksey, Cot- *303 ten committed another offense by forcibly removing Hullsey from the premises.
In addition to healing the testimony of the victim and his parents, the trial court also reviewed the PSI, which included a narrative report of the investigation into this offense. The record, combined with the PSI and Cooksey’s medical records, shows an adequate factual basis for the sentence imposed. The trial court noted that Cotten had a criminal history, with charges for simple battery, possession of marijuana, and cruelty to juveniles, and there would be an undue risk during any period of suspended sentence that Cotten would commit other crimes. Further, Cot-ten was initially charged with the second degree kidnapping of Hullsey, in addition to the instant conviction. That charge, along with a separate matter, were | fidismissed in exchange for Cotten’s guilty plea, resulting in Cotten receiving a substantial benefit in exchange for his guilty plea.
We believe, considering the facts of this case, that a lesser sentence would deprecate the- seriousness of the offense. Cot-ten’s history indicates that, if released, he would likely commit another offense. Furthermore, we agree with the trial court’s characterization of Cotten’s crime as a “manifestation of deliberate cruelty.” Not only did he lie in wait for his victim, he shot him at close range, waited while he pleaded for his life, then shot him again—leaving him to die. Although we are aware of the seriousness of PTSD, the record does not necessarily indicate, considering Cotteris history, his actions here were attributable to such. Thus, the sentence imposed is not grossly disproportionate to the seriousness of the offense committed. This assignment of error is without merit.
In his second assignment of error, Cotten submits that he was not properly advised of the delays within which to apply for post-conviction relief. According to Cotten, he should have been advised that any application for post-conviction relief must be filed within two years of the finality of his conviction and sentence as required by La. C.C.P. art. 930.8, rather than from the date of sentencing, as the trial court advised. The state concurs in Cotteris argument.
Louisiana C. Cr. P. art. 930.8(C) provides that “[a]t the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing.” The record reflects that, at the sentencing hearing, the trial court failed to properly advise Cotten that the prescriptive period within which he must apply for post-conviction relief begins running’when his conviction and sentence |7become final. Accordingly, we now advise Cotten by this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under La. C. Cr. P. arts. 914 or 922. See State v. Morris, 40,322 (La.App.2d Cir.01/25/06), 920 So.2d 359.
Conclusion
Considering the foregoing, the conviction and sentence of Jimmy Dale Cotten are affirmed.
AFFIRMED.